IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NORBERT J. DOTZEL, JR.,** | : | No. 3:03cv1418 |
| d/b/a Dotzel Trucking, and **JOANNE** | : | |
| **DOTZEL,** d/b/a Dotzel Trucking, | : | (Judge Munley) |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| **ERNEST ASHBRIDGE,** | : | |
| **JOHN R. BOWER, DARREN CRISPIN,** | : | |
| and **SALEM TOWNSHIP,** | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Before the court is defendants' motion for summary judgment (Doc. 40) in the instant case. Having been fully briefed and argued, the matter is ripe for disposition.

**Background**

This case centers around a zoning dispute between the plaintiffs and Salem Township. Plaintiffs had sought a conditional use permit to remove topsoil, sand and gravel from 34 acres they owned on or about July 28, 2000. (Defendants' Statement of Material Facts (Doc. 42) (hereinafter "Defendants' Statement") at ¶ 1).[1] They purchased the property with the intention of operating a quarry or soil removal project there. (Plaintiffs' Statement of Material Facts (Doc. 45) (hereinafter

---

[1]We will cite to the defendants' statement for those facts which are undisputed.

"Plaintiffs' Statement") at ¶ 2).[2]  A quarry similar to the one proposed by plaintiffs operates on an adjoining parcel of land.  (Plaintiffs' Statement at ¶ 3; Deposition of Norbert Dotzel, attached as Exh. 8 to Defendants' Statement (hereinafter "Dotzel Dep.") at 36).[3]  Plaintiffs proposed a quarry for their land that would operate on an almost identical scale to the one already operating in the district.  (Plaintiffs' Statement at ¶ 8).

The property is zoned A-1 agricultural district and a conditional use permit is required for removal of natural resources.  (Defendants' Statement at ¶ 1; Plaintiffs' Statement at ¶¶ 9-10).  Plaintiffs applied for such a permit, submitting an environmental impact statement along with their application.  (Plaintiffs' Statement at ¶ 11).  The Township Planning Commission approved the permit on March 15, 2002,

---

[2]Local rule 56.1 states that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required" of the moving party, "as to which it is contended that there exists a genuine issue to be tried." L.R. 56.1.  Further, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Id.  Plaintiffs submitted their own statement of material facts, but did not, as the rule directs, respond to defendants' statements.  In the interest of fairness, we will not deem the facts averred by the defendants admitted.  We urge the plaintiffs (and their attorneys) however, to take care to observe the local rules when filing papers with the court.

[3]Plaintiff Norbert Dotzel's testified at his deposition that he had observed trucks removing material from that land, but admitted "I can't say for sure that they take topsoil.  I really don't know that for sure.  They take sand and gravel, I know that.  I honestly can't say that, because I'd be lying if I did." (Dotzel Dep. at 36).  Plaintiff also submitted an affidavit, where he alleged that before purchasing the property he and his engineer had "inspected the property and observed a quarry operation on the adjoining property owned by Nunsick." (Affidavit of Norbert Dotzel (Doc. 46) at ¶ 3).

subject to three conditions. (Defendants' Statement at ¶ 1; Plaintiffs' Statement at ¶ 14). The Township Board of Supervisors held a public hearing on the application on April 9, 2002. (Defendants' Statement at ¶ 3). At that time, plaintiffs allege, there were no reports, studies or evidence in opposition to the project.[4] (Defendants' Statement at ¶ 11; Plaintiffs' Statement at ¶ 17).

During this meeting discussion arose over whether plaintiffs would have to meet five standards for a variance. (Plaintiffs' Statement at ¶ 20).[5] The Township attorney allegedly told Board members that no such requirement existed. (Plaintiffs' Statement at ¶ 21).[6] The Board members, ignoring this advice, insisted that the standards be met. (Defendants' Statement at ¶ 5; Plaintiffs' Statement at ¶ 48). A transcript of the Board meeting indicates that Supervisor Ashbridge asked the Township's attorney whether the five standards had to be met before the permit could issue. (Transcript of Testimony Before the Salem Board of Supervisors, Attached as Exh. 3 to Defendants' Statement of Facts (hereinafter "T.") at 53). Ashbridge disagreed with the lawyer's assessment that meeting such conditions was unnecessary. (Id. at 54). When the Supervisors voted to deny conditional use approval, Ashbridge cited plaintiffs' failure to meet the five conditions as the reason

---

[4] Plaintiffs do not cite to the record for this allegation. Defendants repeat these allegations, citing to the plaintiffs' complaint, but do not specifically deny the plaintiffs' claims.

[5] Plaintiffs again fail to cite to the record for this claim.

[6] Plaintiffs offer no evidence for this allegation, and defendants simply repeat it in their statement of facts as an allegation by plaintiffs. (See Defendants' Statement at ¶ 4).

3

for his vote.  (Id. at 57).  The Chair of the Board, Defendant Crispin, however, based his vote denying the permit on "[t]he impact on the road and the public property, the street itself that services the property and the long term effects that would affect all the taxpayers of the community."  (Id. at 60).  Supervisor Bower also did not cite the five conditions as the reason for his vote, instead asserting that his "concern is for residents that lived here all their life, to put up with the dust, the trucks, noise, things like that."  (Id. at 56).

On May 14, 2002, defendants denied the plaintiffs' application.  (Defendants' Statement at ¶ 5; Plaintiffs' Statement at ¶ 42).  Plaintiffs appealed this decision to the Luzerne County Court of Common Pleas on June 11, 2002.  (Defendants' Statement at ¶ 7).  Among the contentions they made in their petition was that the Township erred in attempting to regulate the quarry.  (Id.).  Plaintiffs also argued that the Township's attempt to regulate the quarry was pre-empted by the Pennsylvania Non-Coal Surface Mining Conservation and Reclamation Act.  (Plaintiffs' Statement at ¶ 52).  On February 4, 2003, the Court sustained the plaintiffs' appeal and reversed the Board's decision.  (Defendants' Statement at ¶ 7).

The plaintiffs filed a complaint in this court on August 19, 2003.  That complaint, brought under 42 U.S.C. § 1983, alleged that defendants violated plaintiffs' substantive and procedural due process rights.  It also contended that defendants had violated plaintiffs' First Amendment rights.  This court issued a decision on defendants' motion to dismiss on June 30, 2004.  (See Memorandum

4

and Order (Doc. 19)). The court dismissed all of plaintiffs' claims except their substantive due process and Monell claims for municipal liability. The Third Circuit heard an appeal of this decision, and on February 14, 2006 found that the individual members of the Planning Commission were entitled to absolute immunity for their individual acts. (See Mandate of United States Court of Appeals (Doc. 27)). Only plaintiffs' Monell and substantive due process claims against the Supervisors remained.

After the Appellate Court remanded the case, plaintiff deposed several members of the Board of Supervisors. Supervisor Bower testified that he agreed that the Township Attorney had advised him that the five conditions need not be met before granting the variance, but that he nevertheless voted to deny plaintiffs' permit. (Deposition Testimony of John R. Bower, attached as Exh. 6 to Defendants' Statement (hereinafter "Bower Dep.") at 22). Defendant Bower testified that he had voted against the plaintiffs' application "mostly for the people. The neighbors of the property that he owns." (Id. at 18). At the meeting where he voted on the project, Bower discovered that the majority of property owners who lived near the project opposed it. (Id.). These residents had "lived there all their life, and . . . they would have to put up with . . . the noise, the dust, the trucks." (Id. at 20). The Defendant recognized that "they didn't want it, and they have to live there." (Id.). Bower also testified that he was aware that similar excavation work occurred on adjoining property, which required large trucks and frequent traffic. (Id. at 24-25). Further, his

brother, who owned a construction company, often hauled sand a pit on the property. (Id. at 23). Bower's brother did not own the property, however, and John Nunsick, the owner of that property, did not oppose granting plaintiffs their permit. (Id. at 36-37).

Defendant Crispin also testified by deposition. At the time of the events in question, he served as Chairman of the Board of Supervisors. (Deposition of Darren Crispin, Attached as Exh. 8 to Defendants' Statement (hereinafter "Crispin Dep.") at 7). Crispin testified that he voted against the project because "I had concerns about the long term impact on the road, and the impact on the residential environment around the site." (Id. at 12). Though he had not consulted with engineers about the impact of trucks on the road, Crispin claimed that his concern about the weight of trucks on the road was "solely based on the fact that we had a five ton weight limit, and thirty-five ton trucks being requested to use the road on a frequent basis." (Id. at 13). Defendant Crispin also disapproved of the project because of a "concern" about "reduced value in property, reduced enjoyment of their own property, and [nearby landowners'] general objection to the use." (Id. at 14). He further testified that he was aware that the Township attorney had determined that the five conditions insisted on by the Township before issuing the permit were unnecessary.

Plaintiffs also deposed Defendant Ashbridge. He testified that he voted against plaintiffs' application because he felt that the application had failed to comply with the procedures required by the Township ordinance. (Deposition of Ernest

Ashbridge, attached as Exh. 7 to Defendants' Statement (hereinafter "Ashbridge Dep.") at 14). Ashbridge insisted that plaintiffs had sought a variance, and that the Township ordinances require "five points for Provisions for Granting Variances." (Id. at 15). He voted against the application because plaintiffs had failed to "meet the criteria" required by Township ordinance for a variance. (Id.). Ashbridge adhered to this position, even after the Township attorney advised him that he was wrong. (Id. at 16-17). Plaintiffs' failure to comply with these "five points," defendant testified, was his only reason for voting to deny the application. (Id. at 18). Defendant also testified that he was not aware that Defendant Bower's brother operated trucks on the adjoining property. (Id. at 19).

After the close of discovery, defendants filed a motion for summary judgment. Both sides filed briefs and we heard argument, bringing the case to its present posture.

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

7

there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**I. Substantive Due Process**

Defendants advance three grounds for granting them summary judgment on plaintiffs' substantive due process claim, the only claim remaining in the case. We will address each in turn.

**a. Lack of a Property Interest**

In order to prevail on a substantive due process claim, a plaintiff "must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." Woodwind Estates Ltd. v. W.K. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000). The Supreme Court has found that "[p]roperty interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" Board of Regents v. Roth, 408 U.S. 564, 577 (1972). While a property owner can have a substantive due process interest in a particular property use, in Pennsylvania "the holder of a land use permit has a property interest if a state law or regulation limits the issuing authority's discretion to restrict or revoke the permit by requiring that the permit issue as a matter of right upon compliance with terms and conditions prescribed by the statute or ordinance." Woodwind Estates, 205 F.3d at 123.

Defendants argue that plaintiffs cannot prevail on their substantive due process claim because they lack a cognizable property interest grounded in state law and the federal Constitution. They contend that plaintiffs do not create a cognizable property interest merely by requesting a particular use for land they already own. If the zoning officials have clear discretion to determine whether the property owner can pursue that land use, then the owner does not have a property interest in the particular use. In this case, the nature of the conditional use permit (it must fit the general zoning scheme), the standards required of one seeking such a

9

permit (the party seeking the permit has the burden of proving compliance), and the discretion afforded the Board of Supervisors in granting such a permit (they have wide discretion) mean that plaintiff cannot have a property interest. Defendants also argue that this court has already declared that the issue of whether plaintiff has a cognizable property interest depends on whether the Board of Supervisors has discretion in reviewing a conditional use permit. The doctrine of the law of the case prevents the court from changing its position on this issue.

We disagree with the defendants on this matter. We agree that a plaintiff could not prevail on a substantive due process claim if state law did not provide any sort of a property right to that plaintiff. See, e.g., Adams Parking Garage, Inc. v. City of Scranton, 117 F. Supp.2d 417, 424-25 (M.D. Pa. 2001), aff'd, 33 Fed. Appx. 28 (3d Cir. 2002) (finding that plaintiff could not bring a substantive due process claim because by the terms of plaintiff's lease defendant could terminate the agreement when it condemned the property, and no property interest therefore existed for the plaintiff). At the same time, however, numerous cases in the Third Circuit have found that failing to provide a land-use permit for inappropriate reasons can constitute a violation of property rights.[7] See, e.g., Neiderhiser v. Borough of Berwick, 840 F.2d 213, 217-18 (3d Cir. 1988) (finding that plaintiff had alleged a due

---

[7] We note that the standard by which such decisions are judged has changed over time (from "arbitrary and irrational" to "shocks the conscience"). At the same time, however, courts have consistently found that an improper basis for a municipality's zoning decisions can implicate a substantive due process right.

10

process violation when defendant improperly refused to grant a special exception to zoning laws to allow plaintiff's proposed use for property it had leased); Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253, 267-68 (3d Cir. 1995) (finding that a due process violation could exist when Township officials "deliberately and improperly interfered with the process by which the Township issued permits in order to block or to delay the issuance of plaintiff's permits."). As such, we conclude that a property interest exists for the plaintiff in this case, since plaintiff had complied properly with the procedural requirements of the zoning ordinances, and would have been issued a permit for the project but for the allegedly improper actions of Township officials. Indeed, we fail to see how the "shocks the conscience" standard for evaluating a substantive due process claim would have any meaning if the existence of discretion on the part of zoning bodies eliminated the ability of a plaintiff to allege a violation of substantive due process rights. We will therefore deny the motion for summary judgment on this point.

**b. Conscience-Shocking Behavior**

Courts have determined that substantive due process rights are violated by state actors only when those actors' behavior "shocks the conscience." The United States Supreme Court has defined such behavior as "conduct intended to injure in some way unjustifiable by any government interest." County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998). Conscience-shocking behavior consists of "only the most egregious and arbitrary official conduct." Assocs. in Obstetrics &

11

Gynecology v. Upper Merion Twp., 270 F. Supp. 2d 633, 654 (E.D. Pa. 2003). Behavior that shocks the conscience depends on the facts of the case, and the court's "concern with preserving the constitutional proportions of substantive due process demands an exact analysis of the circumstances before any abuse of power is condemned as conscience-shocking." Id.; see also United Artists Theatre Circuit v. Twp. of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003) (holding that "executive action violates substantive due process only when it shocks the conscience but that the meaning of this standard varies depending on the factual context.").

When substantive due process standards are applied to zoning decisions, a plaintiff must allege more than "the kind of disagreement that is frequent in planning disputes." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d Cir. 2004). To implicate due process, such a claim must contain "allegations of corruption or self-dealing" or evidence that officials tried "to hamper development in order to interfere with otherwise constitutionally protected activity at the project site, or" had "some bias against an ethnic group," or performed a "virtual 'taking.'" Id.

No evidence exists by which a reasonable juror could conclude that the defendants engaged in conscience-shocking behavior. While a state court overturned the defendants' zoning decision, none of the evidence indicates that the defendants had an improper motive for their decisions. Defendant Ashbridge's testimony indicates that his decision was based on his belief that plaintiffs had not followed the procedures required under the Township Ordinance for obtaining their

permit. This position was apparently contrary to the advice of the Township solicitor. While such action may have been ill-advised, it is not an example of behavior that "shocks the conscience." Instead, it exemplifies the sort of activity typical to zoning disputes. See United Artists, 316 F.3d at 402 (finding that "[l]and-use decisions are matters of local concern and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives."). Similarly, the evidence indicates that Defendant Crispin voted against the plaintiffs' application because he worried about the effects of the project on the quality of life for those who lived nearby and because of the wear on Township roads from trucks connected to the operation. Acting on such concerns is not in any way "egregious" and does not constitute behavior that shocks the conscience. Eichenlaub, 385 F.3d at 285. Indeed, the defendants' behavior here was not as serious as that in Eichenlaub, where the defendants "applied subdivision requirements to [plaintiffs'] property that were not applied to other parcels; . . . pursued unannounced and unnecessary inspection and enforcement actions; . . . delayed certain permits and approvals; . . . improperly increased tax assessments; and . . . maligned and muzzled the [plaintiffs]." Id. at 286. Since the Court of Appeals concluded that such behavior did not shock the conscience, neither did the behavior in this case. Summary judgment is therefore appropriate for the claims against Defendants Ashbridge and Crispin.

Defendant Bower's decision to vote against plaintiffs' project raises a slightly

more difficult question, since evidence indicates that his brother may have had an interest in a quarrying business operating on an adjoining property. This business, similar to the one proposed by the plaintiffs, may have viewed the plaintiffs as a potential competitor. Self-dealing and corruption on the part of public officials can constitute conscience shocking behavior. See Eichenlaub, 385 F.3d at 285 (approving of a finding of conscience-shocking behavior when defendants "fraudulently converted a tax levy for a $75,000 deficiency into an unauthorized seizure and forced sale and destruction of an $800,000 ongoing business."). Here, however, no evidence indicates that Defendant Bower enjoyed any benefit from denying the plaintiffs' permit. Even if we could assume that he wanted to provide his brother a benefit, we fail to see what benefit would come to plaintiff's brother–who merely obtained materials from the adjacent property–from a decision that prevented the opening of another, similar business nearby. Indeed, the appearance of a new competitor might have lowered prices for the defendant's brother. In any case, the evidence demonstrates that the actual business owner on the adjoining property did not object to providing plaintiffs with a permit for their property. A reasonable juror would therefore be forced to conclude that Defendant Bower's stated reasons for denying plaintiffs' application–that he sought to protect the interests expressed by nearby residents–were the reasons for his action. Since disagreements between neighbors are typical in zoning disputes, we find no evidence of conscience-shocking behavior on the part of Defendant Bower. Accordingly, no reasonable juror

could conclude that defendants violated plaintiffs' substantive due process rights. We will grant defendants summary judgment on that claim.

### c. Judicial Review

Defendants also contend that a substantive due process claim cannot exist because a remedy is available in state court. They argue that as a matter of law a plaintiff cannot state a substantive due process claim if, as here, plaintiff found relief in state court that corrected any error in interpretation of state law. Because we have found that plaintiff has not produced any evidence by which a jury could find that Township officials violated his constitutional rights, we need not address this argument.

### II. Monell Claim

Defendants argue that plaintiffs have not pointed to any municipal policy or custom which would make the Borough liable for depriving plaintiffs of their constitutional rights. There is not evidence in the record, defendants contend, that demonstrates the existence of such a policy or custom. Defendants insist that plaintiffs simply point to a single act by a non-policymaker as a means of asserting municipal liability. Plaintiffs argue that under the prevailing legal standards even a single act can constitute an official policy or custom. Here, the Board of Supervisors issued decisions that forced plaintiffs to seek conditional use for a quarry that they had a right to operate without such approval. Such action is clearly an official policy and therefore serves as the basis for a claim of municipal liability.

15

Torts committed by employees do not make a municipality liable and "a local governing body can be held liable only for an official policy or custom." San Filippo v. Bongiovanni, 30 F. 3d 424, 445 (3d Cir. 1994). Under the standard first articulated in Monell v. Dept. of Soc. Servs., "local governing bodies . . . can be sued directly under §1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dept. of Soc. Servs. of the City of New York, 436 U.S. 658, 690 (1978). Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989).

We need not resolve this dispute. Since we have granted summary judgment on the only remaining constitutional issue in the case–substantive due process–we have found that the Township did not violate plaintiff's constitutional rights. As a result, no municipal policy or custom could have violated plaintiff's constitutional rights. We will accordingly also grant defendants' motion for summary judgment on this claim.

**Conclusion**

For the reasons stated above, we will grant the defendants' motion for summary judgment. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NORBERT J. DOTZEL, JR.,** | : | No. 3:03cv1418 |
| d/b/a Dotzel Trucking, and **JOANNE** | : | |
| **DOTZEL**, d/b/a Dotzel Trucking, | : | (Judge Munley) |
| Plaintiffs | : | |
| v. | : | |
| **ERNEST ASHBRIDGE,** | : | |
| **JOHN R. BOWER, DARREN CRISPIN,** | : | |
| and **SALEM TOWNSHIP,** | : | |
| Defendants | : | |

## ORDER

**AND NOW**, to wit, this 15th day of November 2007, the defendants' motion for summary judgment (Doc. 40) is hereby **GRANTED**. The Clerk of Court is directed to **CLOSE** the case.

                                                      **BY THE COURT:**

                                                      **s/ James M. Munley**
                                                     **JUDGE JAMES M. MUNLEY**
                                                     **United States District Court**